UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHOMEEK JOHNSON,

                         Plaintiff,

v.                                                      Case No. 24-cv-1468-pp

TAMI SCHULTS,

                         Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Shomeek Johnson, an individual incarcerated at Racine Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant violated his right to adequate food. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On January 6, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $30.82. Dkt. No. 7. The court received that fee on February 3, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names Food Service Supervisor Tami Schults as the only defendant. Dkt. No. 1 at 1. The plaintiff alleges that at around 5:00 to 5:45 p.m. on February 25, 2024, he was eating a peanut butter bar that was served as part of his dinner. Id. at 2. The plaintiff says the bar "had large metal shavings in it." Id. The plaintiff told Sergeant Kennedy (not a defendant) about the shavings, and Kennedy told him "it's [sic] nothing he could do." Id. The plaintiff wrote to the Health Services Unit (HSU), but they did not see him until February 28, 2024. Id. He eventually had an appointment with dental staff, and a dentist "removed a large metal shaving from [his] gum area—that was

2mm by 3mm." Id. The plaintiff says that he requested another appointment for lingering pain in his gums after the shaving was removed, but that the HSU did not see him again until March 5, 2024. Id. at 2–3.

The plaintiff alleges that he sent Interview Requests about the incident to the warden, his unit manager, the deputy warden, the HSU manager (none of whom are defendants) and to Schults. Id. He says that he also sent letters to Governor Tony Evers about the incident and his ongoing pain. Id. He mentions that he has a shoulder injury but does not explain why that is relevant. Id. The plaintiff says that he "was then placed in seg[regation]" when he was exhausting his administrative remedies. Id. He says that he sent a property request to an unnamed sergeant but did not receive his documents about the peanut butter bar incident. Id. He says that some of his documents were given to another incarcerated person, so he filed his administrative complaint late. Id. at 3–4. The plaintiff asks the court to award him $1 million in damages. Id. at 5.

The plaintiff attached several pages of exhibits to his complaint. Dkt. No. 1-1. These exhibits include the request he sent to the HSU on February 25, 2024; the Interview Request forms he sent to various officials; the report for the plaintiff's administrative complaint about the incident; the report from the dentist who removed the shaving from his gums; and other documents. Id. Defendant Schults responded to one of the Interview Requests on February 29, 2024, apologizing "that this happened to [the plaintiff]" and informing him that the prison had "taken corrective action so this doesn't happen again." Id. at 3.

4

C.  Analysis

The court analyzes the plaintiff's allegations under the Eighth Amendment, which imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Eighth Amendment protects against "deprivations of essential food" and "other conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348 (1981)). But only "extreme deprivations" amount to cruel and unusual conditions of confinement. Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). To proceed, the plaintiff must show that he has been deprived of "'the minimal civilized measure of life's necessities,'" Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes, 452 U.S. at 347); and that prison officials acted with "deliberate indifference" to a substantial risk that he would suffer serious harm, Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

This court and several others have concluded that "[a] single instance of contaminated food is insufficient to state a claim of deliberate indifference." Morris v. Buege, Case No. 23-cv-11, 2023 WL 2465882, at *4 (E.D. Wis. Mar. 10, 2023) (citing Franklin v. True, 76 F.3d 381 (7th Cir. 1996) (unpublished) (concluding that one instance of food poisoning was insufficient to state Eighth Amendment claim); see also Eines v. Maynard, Case No. 21-cv-00354, 2023 WL 6158834, at *5 (S.D. Ind. Sept. 21, 2023) (citing cases for the proposition that "a single instance of unintentional food poisoning will never give rise to an Eighth Amendment violation"); Becerra v. Kramer, Case No. 16 C 1408, 2017

WL 85447, at *5 (N.D. Ill. Jan. 10, 2017) ("[A] single, isolated incident of food poisoning, even if suffered by many prisoners at an institution, does not rise to the level of a constitutional violation."). The situation is different if the plaintiff alleges "'that prison officials knew of a pattern of inmates being injured by bad food and did not[hing] to remedy the problem.'" Morris, 2023 WL 2465882, at *4 (quoting Olrich v. Kenosha County, Case No. 18-cv-1980, 2020 WL 1169959, at *3 (E.D. Wis. Mar. 11, 2020); and citing Green v. Beth, 663 F. App'x 471, 472 (7th Cir. 2016)). But the plaintiff has not alleged a pattern of contaminated food or of incarcerated persons becoming ill. He alleges only that he consumed a contaminated peanut butter bar on one occasion and injured his mouth.

The Seventh Circuit recently decided an appeal brought by another incarcerated person who brought an identical lawsuit against Schults (identified there as Tami Schult) about the February 25, 2024 incident. See Conley v. Schult, Case No. 24-2612, 2025 WL 303795, at *1 (7th Cir. Jan. 27, 2025). The Seventh Circuit affirmed the judgment dismissing the complaint, concluding that the plaintiff had not stated a claim against Schults because he failed to "allege that Schult[s] was aware of but disregarded serious prison conditions that created an excessive risk to his health and safety." Id. at *2 (citing Hope v. Pelzer, 536 U.S. 730, 736–38 (2002); Balle v. Kennedy, 73 F.4th 545, 552 (7th Cir. 2023)). The plaintiff in that case had not alleged "that Schult[s] was aware of the risk that metal shavings were present in the food, or that there was any pattern of metal shavings being found in prison food." Id.

The Court of Appeals also explained that documents attached to the complaint showed "that Schult[s] promptly responded to [the incarcerated person's] report, apologized, and took corrective action to ensure that the issue would not recur." Id.

The facts alleged here are identical to those in Conley. The plaintiff has not alleged that Schults was aware of the shavings in the peanut butter bar eaten by the plaintiff but disregarded the risk to the plaintiff's health or safety. Nor does the plaintiff suggest that there was a pattern of the bars being contaminated. He alleges only that on one occasion he ate a peanut butter bar that contained a metal shaving, that the shaving became lodged in his gums, that he was treated and had the shaving removed and that Schults apologized and assured the plaintiff that it would not happen again. These allegations do not state an Eighth Amendment claim against Schults, and the court will not allow the plaintiff to proceed on this claim.

The plaintiff alleges that he had to wait three days before HSU staff saw him and removed the shaving, and that he had to wait another five days when he reported lingering pain. Perhaps the plaintiff intended to allege that these delays violated his right to adequate medical treatment. See Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). But the plaintiff has not named any person who he believes is responsible for this

7

delay, and it is not clear whether he wants to proceed on these allegations at all.

The plaintiff also says that he sent Interview Requests to several other officials, but he does not say whether they responded or, if so, what their responses were. Even if he had, he does not allege that any of these supervisory officials were involved in the alleged incident, and supervisors "cannot be held responsible for the actions of subordinates or for failing to ensure that subordinates carry out their jobs correctly." Stankowski v. Carr, No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) (citing Horshaw v. Casper, 910 F.3d 1027, 1029–30 (7th Cir. 2018)). Similarly, an official who only reviewed the plaintiff's request, grievance or appeal cannot be held liable for the incident involving the metal shaving. See George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007); Stankowski v. Carr, Case No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) (citing Owens v. Evans, 878 F.3d 559, 563 (7th Cir. 2017)).

The plaintiff has not stated a claim against Schults or any supervisory officials and may not proceed against them. But it is possible that if he could amend his complaint to provide additional factual detail, the plaintiff might be able to state a claim against HSU staff who he believes delayed his treatment. The court will give him an opportunity to amend his complaint to correct the deficiencies the court has identified and to better explain that claim.

When writing his amended complaint, the plaintiff should give the court enough facts to answer the following questions: 1) Who (which specific persons)

violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must use that form for his amended complaint. He must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to his claim against HSU staff and to describe which defendants he believes committed the violations related to that claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **June 13, 2025**. If the court receives an amended complaint by the day's end on June 13, 2025, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by day's end on June 13, 2025, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$319.18** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Racine Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include with this order a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons.

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 13th day of May, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**