SHOMEEK JOHNSON,

                Plaintiff,

v.                                       Case No. 24-cv-1468-pp

TAMI SCHULTS, *et al.*,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 10) UNDER 28 U.S.C. §1915A**

On May 13, 2025, the court screened self-represented plaintiff Shomeek Johnson's complaint under 42 U.S.C. §1983, determined that it did not state a claim and gave the plaintiff an opportunity to amend the complaint to correct the deficiencies the court had identified. Dkt. No. 9. On May 30, 2025, the court received the plaintiff's amended complaint. Dkt. No. 10. This order screens the amended complaint.

I.     **Screening the Amended Complaint**

    A.     <u>Federal Screening Standard</u>

As the court explained in its May 13, 2025 order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint renames Food Service Supervisor Tami Schults as a defendant. Dkt. No. 10 at 1. It newly names Health Services Manager Kristin A. Vasquez, Nurse Practitioner Randolph and Assistant Health Services Manager Travis Brady. Id.

The amended complaint realleges that on February 25, 2024, the plaintiff ate a peanut butter bar during dinner that "had a large metal shaving in it." Id. at 2. The plaintiff again says he told a non-defendant sergeant about the metal shaving, but that the sergeant was unable to help. Id. The plaintiff says that he wrote to Schults about the issue, and he newly alleges that she "was well (aware) of the poor kitchen condition's of (rotten food) being served and the need to order new pan's and other kitchen [utensil's] that caused this problem in the first place." Id. The plaintiff says that Schults "disregarded the serious prison conditions that created an excessive risk to [his] health and safety." Id. He newly alleges that Schults "was made [aware] repeatedly by other inmate's through out the year's by mean's of either the complaint system or Inmate request slip's." Id. The plaintiff says Schults "stepped down from her position as supervisor" after sending an email to staff acknowledging "that this was the [tenth] incident like this were food was [adulterated] under her watch" and that she knew that a lawsuit "was on the way, because of her action's and failure's to provide adequate and safe food condition's." Id. at 3.

3

The plaintiff realleges that he wrote to the Health Services Unit (HSU), but that "they didn[']t see [him] until" February 28, 2024. Id. He says that unspecified HSU staff removed a 2mm by 3mm metal shaving that he says caused him "extreme pain" for those three days and for five days after. Id. He claims that this delay in receiving treatment violated his Eighth Amendment rights. Id. The plaintiff does not say to whom he wrote, who saw him or who removed the metal shaving from his mouth. Id. He alleges that this "problem is imputed upon" defendants Randoph, Vasquez and Brady because they "usually mange [sic] and schedule all appointment date's [sic], but failed to do so in this case." Id. He says that the delay caused him pain and loss of sleep, and he did not even receive ibuprofen for his pain. Id. The plaintiff seeks $1 million in compensatory and punitive damages. Id. at 4.

C. Analysis

The court explained in the May 13, 2025 order that the plaintiff's allegations suggest a claim under the Eighth Amendment. Dkt. No. 9 at 5 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994); and Rhodes v. Chapman, 452 U.S. 337, 348 (1981)). But this court "and several others have concluded that '[a] single instance of contaminated food is insufficient to state a claim of deliberate indifference.'" Id. (quoting Morris v. Buege, Case No. 23-cv-11, 2023 WL 2465882, at *4 (E.D. Wis. Mar. 10, 2023), and citing cases). The court determined that the allegations in the original complaint did not state an Eighth Amendment claim because the plaintiff did not allege "a pattern of contaminated food or of incarcerated persons becoming ill," alleging "only that

4

Case 2:24-cv-01468-PP    Filed 07/29/25    Page 4 of 10    Document 11

he consumed a contaminated peanut butter bar on one occasion and injured his mouth." Id. at 6 (citing cases). The court also recounted that the Seventh Circuit "recently decided an appeal brought by another incarcerated person who brought an identical lawsuit against Schults . . . about the February 25, 2024 incident." Id. (citing Conley v. Schult, Case No. 24-2612, 2025 WL 303795, at *1 (7th Cir. Jan. 27, 2025)). The Seventh Circuit affirmed the dismissal of the complaint because the incarcerated plaintiff in that case "failed to 'allege that Schult[s] was aware of but disregarded serious prison conditions that created an excessive risk to his health and safety." Id. (quoting Conley, 2025 WL 303795, at *2). Because the facts that the plaintiff alleged in his complaint in this case were "identical to those in Conley," this court concluded that the plaintiff did not state an Eighth Amendment claim against Schults and could not proceed on this claim against her. Id. at 7.

The amended complaint asserts the same claim against Schults as in the original complaint. But the plaintiff now alleges that Schults "was well aware" of problems in the kitchen and that she served rotten or "adulterated" food on at least nine previous occasions. The plaintiff does not say that Schults was aware of an issue with the chocolate or peanut-butter bars having metal shavings in them. But he alleges that she had been made aware for years of "the need to order new pan's" and kitchen utensils "that caused this problem in the first place." Dkt. No. 10 at 2. He says that this ongoing knowledge of issues with food and kitchen equipment shows that Schults "disregarded the serious prison conditions that created an excessive risk to [the plaintiff's] health and

5

safety." Id. That language is nearly identical to the quoted language above that the Seventh Circuit used in Conley to explain why the plaintiff in that case had not sufficiently pled an Eighth Amendment claim. It is curious that the plaintiff alleged none of this in his original complaint and described in that original complaint only the single incident from February 25, 2024. The plaintiff even attached exhibits to his original complaint confirming that the February 25 incident was a single occurrence rather than the latest in a string of issues with the kitchen at the institution. See Dkt. No. 9 at 4 (citing and discussing exhibits at Dkt. No. 1-1). The plaintiff did not attach these exhibits to his amended complaint, nor did he provide any new exhibits in support of his amended complaint.

Regardless, at the screening stage the court must accept as true the new allegations in the amended complaint. See W. Bend Mut. Ins. Co. v. Schumacher, 844 F.3d 670, 675 (7th Cir. 2016). With that in mind, the court finds that the amended complaint states an Eighth Amendment claim that Schults "'knew of a pattern of inmates being injured by bad food and did not[hing] to remedy the problem.'" Id. at 6 (quoting Morris, 2023 WL 2465882, at *4 (internal quotation omitted)). The court will allow the plaintiff to proceed on this claim. If the defendants introduce evidence showing that the allegations in the amended complaint are untrue, the court likely will dismiss the case. A court also may consider sanctions against a plaintiff for declaring under penalty of perjury that the statements in his amended complaint are true and correct if he knew when he submitted the amended complaint that his allegations were not

6

Case 2:24-cv-01468-PP    Filed 07/29/25    Page 6 of 10    Document 11

true. See Dkt. No. 10 at 5; Lindsey v. Hoem, 799 F. App'x 410, 413 (7th Cir. 2020) (explaining district court's ability to dismiss cases, impose fines and sanction litigants with a filing bar for including untrue allegations in complaint).

The plaintiff newly claims that the three-day delay between eating the contaminated bar and receiving medical treatment violated his right to adequate medical care under the Eighth Amendment. The court discussed this potential claim in the May 13 order but did not allow the plaintiff to proceed on it because he did "not name[] any person who he believes is responsible for this delay, and it is not clear whether he wants to proceed on these allegations at all." Dkt. No. 10 at 7–8 (citing Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011)). The plaintiff now names HSU Manager Vasquez, Nurse Practitioner Randolph and Assistant HSU Manager Brady as the responsible officials. But he does not say that he wrote to any of those people about his pain or that any of these people responded to his requests or treated him. He does not explain how any of these defendants were personally involved in his delayed medical treatment and instead says that the delay should be "imputed upon" these defendants because they "usually" manage and schedule appointments but failed to do so in this instance.

For a defendant to be liable on any claim brought under §1983, the plaintiff must allege facts showing how that person was personally responsible for the violation of a constitutional right. See Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021). In other words, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct."

See Colbert v. City of Chicago, 851 F.3d 649, 657 (7th Cir. 2017). To state a claim under the Eighth Amendment for deliberate indifference to a serious medical need, the plaintiff needs to allege that the officials realized that he faced "a substantial risk of serious harm . . . but then disregard[ed] that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). It is not enough for the plaintiff to allege that the officials failed "to alleviate a significant risk that [they] should have perceived but did not," Farmer, 511 U.S. at 838; nor is it enough to allege facts showing that the officials acted negligently or even grossly negligent, Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015).

Although the amended complaint clarifies that the plaintiff wants to proceed on a claim about his medical treatment and although it names the officials he believes are liable, it does not allege enough facts for the court to find that the named defendants were personally involved in the alleged delay of the plaintiff's medical care or were deliberately indifferent to his medical need. The amended complaint does not allege that Vasquez, Randolph or Brady received the plaintiff's requests for treatment of his pain, personally responded to his requests or treated his pain in the HSU. Nor does it allege that they were aware of and disregarded either his need for medical treatment or a risk that he faced without receiving prompt treatment. The amended complaint alleges only that these people *usually* manage and schedule appointments but "failed to do so in this case." That single allegation could mean that none of these defendants managed or scheduled the plaintiff's requests for an appointment or were involved in his requests for medical care. If that is what happened, then the

8

defendants were not personally involved in the alleged delay in treatment and cannot be held liable for it. Or the plaintiff might mean that the defendants simply did not schedule him as quickly as he would have liked. If that is what happened, then the plaintiff does not state an Eighth Amendment claim because he is not entitled to immediate medical care, see Knight v. Wiseman, 590 F.3d 458, 466 (7th Cir. 2009), and short delays in treatment for non-life-threatening issues are to be expected, especially "in the prison environment," Berry v. Peterman, 604 F.3d 435, 442 (7th Cir. 2010). At most, the plaintiff's allegations suggest that one or more of the defendants may have acted negligently. But negligence is not enough to state a claim under the Eighth Amendment. See Farmer, 511 U.S. at 835–36; Burton, 805 F.3d at 785.

The amended complaint does not allege enough facts for the court to infer that these defendants were personally involved in the plaintiff's allegedly inadequate medical care or that, if they were involved, they were aware of but deliberately indifferent to the plaintiff's medical need. The plaintiff may not proceed on this claim, and the court will dismiss Vasquez, Randolph and Brady.

## II. Conclusion

The court **DISMISSES** defendants Kristin A. Vasquez, Nurse Practitioner Randolph and Travis Brady.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendant Tami Schults. Under the informal service agreement, the

9

court **ORDERS** the defendant to respond to the amended complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 29th day of July, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**